UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STANTON SMOOT,

                Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/

Case No. 07-15008

Marianne O. Battani
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 10, 11)**

I. **PROCEDURAL HISTORY**

    A.    <u>Proceedings in this Court</u>

On November 26, 2007, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to <u>28 U.S.C. § 636(b)(1)(B)</u> and <u>Local Rule 72.1(b)(3)</u>, District Judge Marianne O. Battani referred this matter to Magistrate Judge Steven D. Pepe for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability/disability insurance benefits. (Dkt. 2). On January 14, 2008, this matter was reassigned to the undersigned. (Dkt. 6). This matter is

currently before the Court on cross-motions for summary judgment. (Dkt. 10, 11).

B.    Administrative Proceedings

Plaintiff filed the instant claims on August 27, 2004, alleging that he became unable to work on February 10, 2004. (Tr. at 69). The claim was initially disapproved by the Commissioner on February 16, 2005. (Tr. at 45). On March 30, 2005, plaintiff requested a hearing (Tr. at 43-44), and on May 3, 2007, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Michael Wilenkin, who considered the case *de novo*. (Tr. at 408-452). In a decision dated June 7, 2007, the ALJ found that plaintiff was not disabled. (Tr. at 17-26). Plaintiff requested a review of this decision on July 6, 2007. (Tr. at 12). The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on September 25, 2007, denied plaintiff's request for review. (Tr. at 4-6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

In light of the entire record in this case, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **GRANTED IN PART**, only to the extent that this matter should be **REMANDED** to the administrative law judge for further review, and that defendant's motion for summary judgment be **DENIED**.

## II.    STATEMENT OF FACTS

### A.    ALJ Findings

Plaintiff was 41 years of age at the time of the most recent administrative hearing. (Tr. at 411). Plaintiff's relevant work history included about eight years as a environmental services supervisor. (Tr. at 413). In denying plaintiff's claims, defendant Commissioner considered HIV infection, anal condyloma from herpes virus, asthma, history of acute pancreatitis, degenerative changes in the cervical spine, and depression as possible bases of disability. (Tr. at 19).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since February 10, 2004. (Tr. at 19). At step two, the ALJ found that plaintiff's impairments were "severe" within the meaning of the second sequential step. *Id*. At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. *Id*. At step four, the ALJ found that plaintiff could not perform his previous work as a supervisor. *Id*. At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy. (Tr. at 25).

C.    Administrative Record[1]

The Eastwood Clinic performed an intake assessment on plaintiff on February 7, 2004.  (Tr. 159-161).  Plaintiff's symptoms were described as hearing voices, hallucinating, insomnia, loss of appetite, suicidal ideation, decreased activity, and racing thoughts.  *Id*.  In his thoughts he literally demonized his management as devils.  He reportedly continues to think about a car jacking two years earlier, when he was held at gunpoint.  He reported a past suicide attempt. He was reported as anxious and depressed on examination, with poor judgment and insight.  (Tr. 159).  He had homicidal thoughts but no plan.  (Tr. 160).  He was diagnosed as having a major depressive disorder, with a global assessment of functioning (GAF) score of 48.  Ten days later, a psychiatric note diagnosed major depression with psychotic features, post-traumatic stress disorder (PTSD)-chronic, and general anxiety disorder.  (Tr. at 156).  In the mental status examination section of the note it was noted that the claimant suffered from visual, auditory hallucinations and delusions.  *Id*.  The Eastwood psychiatrist, Dr. Neelakantam R. Jolepalem," assigned plaintiff a GAF score of "40," which, according to plaintiff,

---

[1] Plaintiff's main objection to the ALJ's decision is the treatment of his psychiatric difficulties.  (Dkt. 10, p. 7).  Thus, this report will primarily focus on the evidence relating plaintiff's mental impairments.

Report and Recommendation
Cross-Motions for Summary Judgment
*Smoot v. Comm'r*; No. 07-15008

denotes difficulties in appreciating reality. (Dkt. 10, citing, Tr. at 156, 208). On June 4, 2004, Dr. Jolepalem modified plaintiff's diagnosis to schizoaffective disorder, bipolar type. (Tr. at 146). He remained irritable and angry about people, with paranoia noted, but his hallucinations and delusions were no longer noted. (Tr. at 145, 146). Plaintiff continued to treat at the Eastwood clinic through May 18, 2005. (Tr. at 207-212). His diagnoses remained the same. (Tr. at 212). He continued to have trouble being in public places and being among people, but the medications were helpful and the hallucinations and delusions were under control. (Tr. at 211, 207).

In May, 2005, plaintiff began treating with Dr. Hiten Patel, a psychiatrist. (Tr. at 352-355). Plaintiff noted difficulties with sleep and paranoia in which he felt people were against him. (Tr. at 352). The claimant appeared anxious. (Tr. at 353). Major Depressive Disorder was diagnosed with occupational problems and a GAF of 48. (Tr. at 355). Dr. Patel had six more appointments with Mr. Smoot. As plaintiff points out, the content of these notes is not legible. (Tr. at 350-351). Dr. Patel responded to a request to evaluate plaintiff on February 22, 2007, and he noted six different features of depression: pervasive loss of pleasure and interest, sleep disturbance, psychomotor agitation or retardation, decreased energy, feelings

of guilt or worthlessness, and difficulty concentrating or thinking. (Tr. at 345-349). He noted the following restrictions in the four areas of functioning used by the Commissioner: activities of daily living-mild; difficulty in maintaining social functioning-moderate; deficiencies of concentration, persistence and pace-marked; and three episodes of decompensation, each of extended duration. (Tr. at 346). Dr. Patel also reported a chronic affective disorder of over two years duration, which, despite medication and psychosocial support, were causing: repeated episodes of decompensation, residual disease which resulted in a marginal adjustment so that even a minimal increase in mental demands would cause the claimant to decompensate, and a current history showing the inability to function out of a highly supportive living arrangement. (Tr. at 347). A mental functional capacity demonstrated marked limitations in the abilities: to maintain attention and concentration over extended periods; to perform activities within a schedule, maintain regular attendance and be punctual; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace, without an unreasonable number or length of breaks. (Tr. at 348-349).

On December 16, 2004, Dr. R. Hasan, a state agency mental health

consultant, examined Mr. Smoot.  He observed, low motor activity, low self

esteem and no motivation.  (Tr. at 167).  Dr. Hasan wrote that Mr. Smoot admitted

to having heard voices and to suicidal thoughts in the past.  Mood swings and poor

sleep were also noted, though he was calm during the interview.  Dr. Hasan

diagnosed plaintiff with bipolar disorder with psychotic features and thought the

mood disorder was a result of an "Axis II" disorder.  Dr. Hasan assigned plaintiff a

GAF score of 45-50.  (Tr. at 168).

The State Agency then assigned evaluation of this claim to James Tripp,

Ed.D.  (Tr. at 119).  He agreed that plaintiff suffered from major depressive

disorder and PTSD.  (Tr. at 122, 124).  Dr Tripp noted the following restrictions in

the four areas of functionality used by the Commissioner: activity of daily

living-moderate; difficulty in maintaining social functioning-mild; deficiencies of

concentration, persistence and pace-moderate; no episodes of decompensation.

(Tr. 129).  Dr. Tripp limited plaintiff to the performance of "simple, sustained

unskilled work."  (Tr. at 135).

### 3.    Vocational expert

In the first hypothetical presented to the vocational expert, the ALJ used the

limitations as testified to by the plaintiff, which if accepted, would result in a

finding of total disability:

> Q      Let's take the Claimant as he presents this
> morning, a younger individual, at all times pertinent to
> our inquiry, possesses the past educational background,
> past relevant work experience described, and assume, if
> you would, that his description of limitations is accurate.
> All that being the case, would he be able to perform his
> past relevant work? If not, would he then be able to
> perform any work that exists in the state of Michigan or
> metropolitan Detroit area?
>
> A      Your Honor, considering his testimony, it would
> be my opinion he would not be able to return to any of
> his prior work or any other.
>
> Q      Being precluded from so doing is a consequence
> of what vocationally preclusive factors reflected in the
> testimony?
>
> A      His perception of pain in the various parts of his
> body that he's described, the frequency with the diarrhea,
> his perception of fatigue and the need to lie down during
> his normal waking hours, as well as his emotional state,
> difficulty getting along with people, easily irritated.  In
> my opinion, the combination would be preclusive.

(Tr. at 445-446).

In the second hypothetical offered by the ALJ to the vocational expert, he

allowed for some emotional and mental limitations, which, as accepted by the

ALJ, resulted in a finding that plaintiff had the capacity for sedentary work:

> Q      Let's assume the existence of a hypothetical

individual, one who is vocationally situated in a manner similar to that of the Claimant with respect to age, education, and past relevant work. Further, with regard to such an imaginary person, please assume that a reasonable interpretation of the credible medical record would allow for a conclusion and support of finding he retains the residual functional capacity to sit six of eight hours of an eight hour work day, stand or walk two of eight hours of an eight hour work day, lift as much as 10 pounds only occasionally, lesser weights somewhat more frequently. And assume a well established history of exposure to, and infection by Human Immunal [sic] Deficiency Virus, that in some, some manner appears to be the source of some continuing gastrointestinal difficulty, that playing aside the question of frequency of bathroom visits would necessitate that, or require, rather, that he be given free access to lavoratory facilities pretty much on demand. You may assume that use of those facilities in a typical, typical day, would not intend to take him away from the work site as, such as that may be, sufficient length of time as to interfere with his ability to be productive. May assume complaints of pain and discomfort in the back. and the arm, and the leg. The precise etiology of those symptoms is somewhat opaque. Nevertheless, we can, we can credit them, at least to the extent that they appear to be and [sic] ongoing, albeit transient, problem. This record does not reveal any deficiencies in respect thereof that would be incompatible with functioning in the manner that I suggest. **Does appear to be a history of some emotional difficulties, evidence of depression and anxiety of varying degrees of severity at varying times. In consideration of the effect of the emotional difficulties on cognitive functioning, it would be necessary that the hypothetical individual would be limited to the performance of simple, routine,**

**repetitive tasks, tasks wherein contact with supervisory personnel and coworkers would be kept to a bare minimum. He should not be required to perform vocational activities wherein the nature and productivity of the work is interdependent on the work of others, nor is the work of others interdependent with his. You may assume that he should allowed to work in an environment that will allow him to function pretty much at his own pace**. In other words, the pace of the work's productivity should not be dictated by some external source over which he has no control, such as an assembly line or a conveyor belt. Allowed to work at his own pace, he should be able to meet at least daily production standards. And, lastly, assume that the deficits suffered, and the modalities employed to treat the same, do not warrant that the hypothetical individual lie down during the course of a typical work day. Now if you were to consider all of those limitations, would such a person be able to perform the work performed by the Claimant in the relevant past? If not, would he then be able to perform any other work that exists in the geographic areas I mentioned?

A      Under that hypothetical he would not be able to return to his prior work. You have outlined the capacity for sedentary work activity. And taking into consideration the comments that you made, I would indicate that the most appropriate jobs would be in the area of sedentary unskilled bench work, basically involved with simple, repetitive tasks, jobs such as a visual inspector, hand packager, sorter, and the like. In the Detroit area, I would indicate approximately 8,000 in existence, and doubling that for the state.

(Tr. at 446-448) (emphasis added).

Plaintiff's attorney asked the vocational expert about the effect of Dr. Patel's opinions of plaintiff's limitations, which, if accepted, would result in a finding of total disability:

> ATTY:  If you consider [Dr. Patel's report], what impact, if any, would that have on the ability to sustain the types of jobs that otherwise you have described today?
>
> A    He would not be able to.
>
> Q    And is there one or more individual aspects of that assessment that would preclude work?
>
> A    Three are marked, markedly limited and that would be the ability to maintain attention and concentration for extended periods of time, the ability to perform activities within a schedule, maintain regular attendance, and be punctual, and the third one is the ability to complete a normal work day and work week without interruptions from psychologically based symptoms, and to perform at a consistent pace.
>
> Q    Okay. Would anyone of those three individually preclude the work, or would it be in combination?
>
> A    Well, they're, they're really all kind of related, indicating that over time the person would have difficulty sustaining an ongoing activity.

(Tr. at 450-451).

B.    Parties' Arguments

      1.    Plaintiff's motion for summary judgment

Plaintiff asserts that several errors were committed by the ALJ in this case.
First, plaintiff claims that the ALJ failed to give proper weight to plaintiff's
treating physicians, and in particular, plaintiff's psychiatrists.  (Dkt. 10, p. 12).
According to plaintiff, there is "uniform, uncontroverted opinion among those
mental health professionals who have actually seen Mr. Smoot."  *Id*.  All of them
concluded that plaintiff's psychiatric condition is severe and would interfere with
work.  (Dkt. 10, p. 12, citing, Tr. at 156, 161, 345-349, 354, 167-168).  According
to plaintiff, Dr. Patel addressed the issue of the his functioning directly, while
other treaters did so through their reference to his GAF scores, which coded the
claimant as having a "serious" impairment.  (Dkt. 10, p. 12, citing, Tr. at 345-349).
The ALJ, however, according to plaintiff, merely relied on a non-examining
physician, who did not review the entire record.  (Dkt. 10, p. 13).  Plaintiff asserts
that the ALJ failed to state sufficient reasons for discounting all the treating
opinions, in favor of the a consulting opinion and that if the basis of Dr. Patel's
opinion was unclear, then the ALJ was required to recontact Dr. Patel for
clarification under SSR 96-5p.  *Id*. at 14.  Plaintiff asserts that the ALJ's error

requires, at the very least, a remand to the ALJ to state his reasons for disregarding the opinions of the treating physicians. *Id*. at 15.

Plaintiff also objected to the ALJ's assessment of plaintiff's symptoms and credibility. Plaintiff argues that the ALJ's analysis in this regard is perfunctory: "the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (Dkt. 10, p. 15, citing, Tr. at 24). Plaintiff also complains that the ALJ did not assess his daily activities in the decision. He asserts that the "whole point of recounting daily activities is for the ALJ to use them to assess credibility, and then explain why he found the claimant to be or not to be credible." (Dkt. 10, p. 15). According to plaintiff, the ALJ simply refers to a non-existent discussion of the claimant's daily activities: "As stated, the claimant's daily activities are not as limited as he would suggest." (*Id*. citing, Tr. at 24). Simply, according to plaintiff, the ALJ's decision contains no explanation of what plaintiff's activities of daily living are and why the ALJ does not find them credible. (Dkt. 10, p. 16).

2.     Commissioner's counter-motion for summary judgment

The Commissioner disputes plaintiff's argument that the ALJ should have rejected Dr. Tripp's opinion because Dr. Tripp did not see a portion of the records

from Eastwood, or have Dr. Patel's records. (Dkt. 11, p. 12). The Commissioner acknowledges that Dr. Tripp did not have all of the records from Eastwood, but asserts that he had "most of the records, and he certainly had the records that reflected Mr. Smoot's worst functioning." (Dkt. 11, p. 12). The Commissioner argues that these records reflect improvements in plaintiff's condition and thus, "even though Dr. Tripp did not have the notes from some of plaintiff's Eastwood office visits, it is unlikely that he would have rendered a more restrictive opinion based on those visits." (Dkt. 11, p. 12). The Commissioner also argues that it does not matter that Dr. Tripp did not have any treating notes or records from Dr. Patel, because Dr. Patel's "opinions were unsupported for several reasons and, thus, would not likely have changed Dr. Tripp's opinion." (Dkt. 11, pp. 12-13). First, according the Commissioner, the record is devoid of any evidence that plaintiff either lived in a highly supportive living arrangement or was unable to function outside a highly supportive living arrangement. Second, according to the Commissioner, the record shows that plaintiff experienced only one instance of decompensation. (Dkt. 11, p. 13, citing, Tr. at 20, 415). Third, while the record showed that plaintiff complained of some concentration difficulties, his treating physicians did not indicate that these were more than moderate. *Id.* Finally,

according to the Commissioner, the ALJ accommodated plaintiff's moderate concentration difficulties by finding that plaintiff could perform only simple, repetitive, unskilled tasks.  *Id.*, citing, Tr. at 20.  The Commissioner asserts that because Dr. Patel's opinion was unsupported, "Dr. Tripp's lack of access to it was of little consequence."  (Dkt. 12, p. 13).

The Commissioner counters plaintiff's claim that the ALJ failed to properly evaluate his fatigue by asserting that "no doctor imposed physical work-related limitations that were inconsistent with the ALJ's physical RFC finding" and in fact, no physician imposed any specific work-related restrictions with respect to Mr. Smoot's physical abilities."  (Dkt. 11, p. 15).  The Commissioner argues that, where, as here, the record contains no physician-ordered restrictions, the ALJ may reasonably find that the claimant's impairments are not disabling.  *Id.*, citing, *Maher v. Sec'y of Health and Human Servs.*, 898 F.2d 1106, 1109 (6th Cir. 1989)* ("lack of physical restrictions constitutes substantial evidence for a finding of nondisability").

### 3.    Plaintiff's reply

Plaintiff filed a reply in order to address the Commissioner's motion for summary judgment.  (Dkt. 14).  Plaintiff argues that the ALJ simply failed to

follow the PRT and try as it might, the Commissioner's after-the-fact attempt to do so, based on the medical records, is insufficient. Plaintiff further argues that the ALJ's failure to address how he weighed the opinions of the various treating physicians and why he discounted Dr. Patel's opinion entirely. (Dkt. 14, p. 2).

Plaintiff also asserts that the ALJ failed to properly evaluate plaintiff's claim of fatigue. According to plaintiff, the ALJ improperly discounted plaintiff's treating physician's opinions regarding his fatigue because it was not accompanied by exertional limitations. Plaintiff suggests that his fatigue is not exertion-related, but rather, is a result from his HIV infection. (Dkt. 14, p. 3). Plaintiff also asserts that the ALJ failed to even address plaintiff's activities of daily living in his credibility analysis. Plaintiff suggests that this failure goes to the "heart" of the credibility analysis and cannot be ignored. (Dkt. 14, p. 4).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The

administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (*en banc*).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen*, 800 F.2d at 545.

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted).

      B.     <u>Governing Law</u>

          1.     Burden of proof

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

2.      Substantial evidence

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would decide the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan, 474 F.3d at 833*; *Mullen, 800 F.2d at 545*. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for

that weight." Soc.Sec.R. 9602p, 1996 WL 374188, *5 (1996). The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence in [the] case record." *Wilson, 378 F.3d at 544*; 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Although the ALJ is not bound by a treating physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'" *Dent v. Astrue, 2008 WL 822078, *16 (W.D. Tenn. 2008)* (citation omitted). "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Social Security, 482 F.3d 873, 875 (6th Cir. 2007)*. "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari, 55 Fed.Appx. 279, 284 (6th Cir. 2003)*. The findings of a psychologist are relevant in establishing the existence and severity of a mental impairment, and a psychologist's evaluation of the disabling nature of a mental

impairment need not be given less weight than that of a psychiatrist.  *Crum v. Sullivan*, 921 F.2d 642 (6th Cir. 1990).

      C.      <u>Analysis and Conclusions</u>

          1.      Treating physician evidence, residual functional capacity, and credibility.

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole.  20 C.F.R. § 404.1527(d)(2)-(6).  Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time.  20 C.F.R. § 404.1527(d)(1)-(2).  A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight."  Soc.Sec.R. 96-2p, 1996 WL 374188, *5 (1996).  The opinion of a treating physician should be given controlling weight if it is "well-supported by

medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Although the ALJ is not bound by a treating physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'" *Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted). "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003). Courts have remanded the Commissioner's decisions when they have failed to articulate "good reasons" for not crediting the opinion of a treating source, as § 1527(d)(2) requires. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2000), citing, *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the

Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.").

When evaluating the opinions of treating physicians, the ALJ must also consider, under some circumstances, contacting the treating source for clarification:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

SSR 96-5p, 1996 WL 374183, *6; *see also*, 20 C.F.R. § 1527(c), 20 C.F.R. § 404.1512(e). Where an ALJ discounts the opinions of a treating physician because the record includes virtually no medical records of plaintiff's treatment with that physician, the ALJ should perform a further investigation pursuant to SSR 96-5p. *D'Angelo v. Soc. Sec. Comm'r*, 475 F.Supp.2d 716 (W.D. Mich. 2007); *see also Sims v. Apfel*, 530 U.S. 103, 110-111 (2000) (The ALJ has a duty to investigate the facts and develop the arguments both for and against granting

benefits.).

The ALJ concluded that the record did not show any "indication of any physical impairment or combination of impairments that would preclude the claimant from performing at least sedentary work, which does not involve any prolonged walking or standing or any significant lifting." (Tr. at 22). The ALJ further concluded that sedentary work "would accommodate some fatigue and weakness, and there is no indication of any fatigue of a severity to preclude the claimant from sustained work of a nonexertional variety." (Tr. at 22). While the ALJ acknowledged that plaintiff's "infectious disease specialist through the Infectious Disease Center, T. Madavan, M.D., concluded in a report dated May 2005 that the claimant had disabling fatigue and severe depression and was totally disabled," he concluded that the "evidence of record does not show any significant symptoms from the HIV infection or any depression that would prevent the ability to perform unskilled work." (Tr. at 22-23). While Dr. Madavan reported that plaintiff suffered from disabling fatigue and that there was a reasonable medical basis for the fatigue, he did not describe this medical basis and responded "not available" to all the questions posed regarding plaintiff's physical limitations. (Tr. at 215). Plaintiff argues that the source and medical basis for plaintiff's

fatigue is obvious, given that he is HIV positive. Although, some of plaintiff's

treating physicians attributed his fatigue to depression. (Tr. at 116, 362).

Dr. Patel began treating plaintiff in January, 2005 and concluded in a report

dated February 22, 2007 that the claimant had mild limitations of daily activities,

moderate limitations with social functioning, marked deficiencies in

concentration, persistence and pace, and three episodes of decompensation. (Tr. at

19). The conclusions of Dr. Patel, if accepted, would compel a finding of

disability, as the vocational expert testified. (Tr. at 450-451). After reviewing Dr.

Patel's conclusions, the ALJ concluded that "[n]onetheless, the various reports of

record fail to document such functional limitations that would likely result [in] a

Listing-level severity." (Tr. at 20). While Dr. Patel's mental status reports are

clear and legible, the supporting treatment notes, on which the ALJ does not

appear to rely or discuss, are not legible. (Tr. at 350-352). In his decision, the

ALJ relied on Dr. Tripp's January, 2005 report concluding that plaintiff had a

moderate restriction of daily activities, mild limitation of social functions,

moderate limitations with maintaining concentration, persistence and pace, and no

episodes of decompensation. (Tr. at 20). As plaintiff points out, Dr. Tripp did not

have the benefit of any medical records generated after January, 2005, which

included all of Dr. Patel's records.

Based on the foregoing, the undersigned concludes that the ALJ failed to properly evaluate the treating physician opinion of Dr. Patel. The ALJ failed to give sufficient reasons for discounting the opinions of Dr. Patel, in favor of a outdated report from the state agency physician. The ALJ also failed to conduct a sufficient investigation into the basis of Dr. Patel's opinion regarding plaintiff's mental limitations.

With respect to Dr. Madavan, the undersigned concludes that the ALJ properly discounted his opinion that plaintiff was "completely disabled" based on fatigue and depression. An ALJ may reject a treating physician's determinations when he has good reason to do so. *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988). And, the ultimate "determination of disability is the prerogative of the [ALJ], not the treating physician." *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984). The ALJ determined that plaintiff possessed the residual functional capacity to return to a limited range of sedentary work. (Tr. at 20). The residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the

claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). Plaintiff argues that the source and medical basis for plaintiff's fatigue (his HIV) is obvious. However, plaintiff seeks to equate a condition automatically with a limitation. This is not permitted. "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004). "The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed.Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e).

Further, Dr. Madavan's bare conclusion of "disability" is not supportive of plaintiff's claim that he is not able to perform sedentary work, given that neither Dr. Madavan nor any other medical source articulated any specific physical restrictions plaintiff. *See Maher v. Sec'y of Health and Human Serv.*, 898 F.2d 1106, 1109 (6th Cir. 1987), citing, *Nunn v. Bowen*, 828 F.2d 1140, 1145 (6th Cir. 1987) ("lack of physical restrictions constitutes substantial evidence for a finding of non-disability."). Despite the lack of specific physical restrictions or limitations articulated by any treating source, the ALJ, in his second hypothetical, allowed for

several physical restrictions, including limiting the sedentary work to "simple, routine, repetitive tasks...where[] contact with supervisory personnel and coworkers would be kept to a bare minimum." (Tr. at 447). The ALJ also partially accommodated plaintiff's complaints of pain and discomfort and his gastrointestinal difficulties in this hypothetical. *Id*.

The ALJ did, however, find that plaintiff's testimony was not completely credible. An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, 1999 WL 98645, *3 (6th Cir. 1999).

Normally, the ALJ's credibility finding is entitled to deference and should not be disregarded given the ALJ's opportunity to observe the plaintiff's demeanor. However, if the ALJ rejects the testimony of the plaintiff as not being credible, the ALJ must clearly state the reasons for that conclusion. *Felisky v.*

*Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). In commenting on plaintiff's credibility, the ALJ must follow the requirements of, among other provisions, 20 C.F.R. § 404.1529 as well as SSR 96-7p, which provides that:

> the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. The finding on credibility of an individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individuals allegations have been considered" or that "the allegations are (or are not) credible." *It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.*

(Emphasis added).

Plaintiff argues that the ALJ did not properly evaluate plaintiff's testimony relating to his limitations arising from fatigue. As set forth above, however, the ALJ properly concluded that there was no medical basis in the record to support

Report and Recommendation
Cross-Motions for Summary Judgment
*Smoot v. Comm'r*; No. 07-15008

Dr. Madavan's claim that plaintiff's fatigue was so severe as to be disabling.

Thus, the undersigned finds no basis to disturb the ALJ's credibility determination

in this respect.

Plaintiff also argues that the ALJ improperly found his testimony regarding

his activities of daily living to be not credible. Dr. Patel opined that plaintiff was

only mildly limited in his daily activities, while Dr. Tripp opined that plaintiff was

moderately limited in his daily activities. (Tr. at 19, 20). The ALJ stated that

plaintiff's "activities of daily living are not as limited as he would suggest." (Tr.

at 24). The ALJ also stated:

> Upon considering the evidence of record, the
> undersigned finds that the claimants medically
> determinable impairments could reasonably be expected
> to produce the alleged symptoms. However, the
> claimant's statements concerning the intensity, duration
> and limiting effects of these symptoms are not entirely
> credible.

(Tr. at 24). Perhaps the ALJ's credibility analysis could have been more clearly

articulated, but the undersigned concludes that it should not be disturbed, given its

sound basis in the record. For example, the ALJ examined the records pertaining

to plaintiff's HIV treatment and concluded that no symptoms of this disease, as set

forth in the medical records, would preclude sedentary work and that his

condition, over an extended period of time was "stable" and "well-controlled." (Tr. at 22). The ALJ also concluded that plaintiff's gastrointestinal complaints as articulated at the hearing were not as severe as outlined in his medical records. (Tr. at 23). The ALJ also concluded that plaintiff's complaints of severe pain and asthma were not consistent with the medical evidence in the record. (Tr. at 23-24). Thus, the undersigned suggests that there is substantial evidence to support the ALJ's credibility determination as to his physical limitations along with the ALJ's conclusions that the "claimant's daily activities were not as limited as he would suggest," and that he "does not have any medication side effects that would likely interfere with his ability to work." (Tr. at 24).

### 2. Mental Impairment

As to an allegedly disabling mental impairment, the Commissioner has promulgated a special technique to ensure that all evidence needed for the evaluation of such a claim is obtained and evaluated. This technique was designed to work in conjunction with the sequential evaluation process set out for the evaluation of physical impairments. 20 C.F.R. §§ 404.1520a, 416.920a. Congress laid the foundation for making disability determinations when mental impairments are involved in 42 U.S.C. § 421(h), which provides:

An initial determination under subsection (a), (c), (g), or (I) of this section that an individual is not under a disability, in any case where there is evidence which indicates the existence of a mental impairment, shall be made only if the Commissioner has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.

Section 404.1520a explains in detail the special procedure and requires the completion of "a standard document outlining the steps of this procedure." 20 C.F.R. § 404. 1520a(d). The regulation further requires the standard document to be completed and signed by a medical consultant at the initial and reconsideration levels, but provides other options at the administrative law judge hearing level. _Id_. Under this procedure, the Commissioner must first make clinical findings, as to whether the claimant has a medically determinable mental disorder specified in one of eight diagnostic categories defined in the regulations. _Merkel v. Comm'r of Social Security_, 2008 WL 2951276, *10 (E.D. Mich. 2008), citing, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A.

The Commissioner must then measure the severity of any mental disorder; that is, its impact on the applicant's ability to work. "This is assessed in terms of a prescribed list of functional restrictions associated with mental disorders."

*Merkel*, at \*10, citing, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C. The first area of functional restriction is "activities of daily living." This area requires the Commissioner to determine the claimant's ability to clean, shop, cook, take public transportation, maintain a residence and pay bills. *Merkel*, at \*10. Under the second functional area, "social functioning," the Commissioner must determine whether the claimant can interact appropriately and communicate effectively and clearly with others. *Id*. The third functional area, "concentration, persistence, or pace," refers to the claimant's ability to sustain focused attention sufficiently long to permit the timely completion of tasks found in work settings. *Id*. The final functional area, that of "deterioration or decompensation in work or work-like settings," refers to the claimant's ability to tolerate increased mental demands associated with competitive work. *Id*.

The degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace) is rated using a five-point scale: None, mild, moderate, marked, and extreme. *Pauley v. Comm'r of Social Security*, 2008 WL 2943341, \*9 (S.D. Ohio 2008). The degree of limitation in the fourth functional area (episodes of decompensation) is rated using a four-point scale: None, one or two, three, four or more. *Id*. "The last point on

each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Pauley*, at *9, citing, 20 C.F.R. § 404.1520a(c)(4). Ratings above "none" and "mild" in the first three functional areas and "none" in the fourth functional area are considered severe. *Pauley*, at *9, citing, 20 C.F.R. § 404.1520a(d)(1). If the first two functional areas receive ratings of "none" or "slight," the third a rating of "never" or "seldom," and the fourth a rating of "never," the Commissioner will conclude that the mental impairment is not severe, and that it cannot serve as the basis for a finding of disability. *Merkel*, at *10, citing, 20 C.F.R. §§ 404.1520a(c)(1), 404.1521.

If the functional areas indicate that the mental impairment is "severe," the Commissioner must decide whether it meets or equals a listed mental disorder. *Merkel*, at *10, citing, 20 C.F.R. § 404.1520a(c)(2). The Commissioner will determine that the claimant is disabled if the mental impairment is a listed mental disorder and at least two of the criteria have been met. *Merkel*, at *10, citing, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02. If the severe mental impairment does not meet a listed mental disorder, the Commissioner must perform a residual functional capacity assessment to determine whether the claimant can perform some jobs notwithstanding his mental impairment. *Merkel*, at *10, citing, 20

C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

"When a record contains evidence of a mental impairment that allegedly prevented claimant from working, the Secretary is required to follow the procedure for evaluating the potential mental impairment set forth in his regulations and to document the procedure accordingly." *Zuckschwerdt v. Comm'r of Soc. Sec.*, 2008 WL 795772, *6 (E.D. Mich. 2008), quoting, *Andrade v. Sec'y of Health and Human Serv.*, 985 F.2d 1045, 1048 (10th Cir. 1993) (internal citations omitted). The PRT required by 20 C.F.R. § 404.1520a "is not only used to determine severity but also to determine the 'functional consequences of the mental disorder(s) relevant to the complainant's ability to work.'" *Zuckschwerdt*, at *7, quoting, *Witt v. Barnhart*, 446 F.Supp.2d 886, 898 (N.D. Ill. 2006). "[I]t is worth noting that one of the stated purposes for the special technique is to help the Social Security Administration organize and present its findings in a clear, concise, and consistent manner." *Zuckschwerdt*, at *7, quoting, *Selassie v. Barnhart*, 203 Fed.Appx. 174, 176 (9th Cir. 2006) (internal citations omitted). "The specific documentation requirements ... are not mere technicalities that can be ignored as long as the ALJ reaches the same result that it would have if it had followed those requirements." *Zuckschwerdt*, at *7, quoting *Selassie*, 203

Fed.Appx. at 176. The PRT document must be completed at the "initial, reconsideration, administrative law judge hearing, and Appeals Council levels." *Carr v. Apfel*, 1999 WL 1489892, *6 (N.D. Ohio 1999), quoting, 20 C.F.R. § 404.1520a(d). At the initial and reconsideration levels, the document must be completed and signed by a medical consultant. *Carr*, at *6, citing, § 404.1520a(d)(1). The ALJ may complete the document with or without the assistance of a medical advisor. *Carr*, at *6, citing, § 404.1520a(d)(1)(i).

In this case, the only PRT in the record was Dr. Tripp's January, 2005 PRT, apparently in conjunction with the initial denial. Given that no motion for reconsideration was filed, a second PRT was not performed by a medical consultant at that level. Given that the hearing before the ALJ occurred in March, 2007, over two years after the last PRT was completed, and that plaintiff had extensive psychiatric treatment between January, 2005 and March, 2007,[2] the completion of a new PRT at the hearing level was especially critical. Just as in *Carr*, the "ALJ failed entirely to complete a PRT form, obtain assistance from a medical advisor, or append the form to his decision as required by the Social Security Regulations." *Id*.

_____

[2] Plaintiff was insured through December 31, 2009. (Tr. at 17).

Report and Recommendation
Cross-Motions for Summary Judgment
*Smoot v. Comm'r*; No. 07-15008

Based on the foregoing, the undersigned suggests that the ALJ's failure to consider the nature and degree of plaintiff's mental limitations allows for the possibility that the residual functional capacity analysis does not fully account for his deficiencies. While this record may not justify a remand for an award of benefits, *see Faucher v. Sec'y of Health and Human Serv.*, 17 F.3d 171, 176 (6th Cir. 1994), and *Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994), a remand is nonetheless required for an analysis of plaintiff's mental limitations as required by 20 C.F.R. § 404.1520a, as well as for the general principle that an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Lowery v. Comm'r of Soc. Sec.*, 2003 WL 236419, *5 (6th Cir. 2003).

Given this recommendation, the undersigned also suggests that the ALJ reassess his credibility determinations as it relates to plaintiff's mental limitations. The record basis for the ALJ to conclude that plaintiff's mental limitations, as set forth in his testimony, are not credible, are less clear than the basis for finding that his physical limitations are not entirely credible. As set forth in SSR 96-5p, a "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to

the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id*. As set forth above, the undersigned suggests that the ALJ erred by failing to provide sufficient reasons for rejecting Dr. Patel's opinions and also erred by failing to sufficiently investigate Dr. Patel's opinions. Based on these judgments, the undersigned cannot conclude that the ALJ's credibility determination as to plaintiff's mental limitation is grounded in substantial evidence, particularly where the medical evidence relied on for this credibility determination (Dr. Tripp's January, 2005 report and the Eastwood treatment notes from 2004) are outdated. (Tr. at 20).

## III. RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **GRANTED IN PART**, only to the extent that this matter should be **REMANDED** to the administrative law judge for further review, and that defendant's motion for summary judgment be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v.*

*Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Within 10 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall not exceed 20 pages in length unless such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections by motion and order. If the Court determines any objections are without merit, it may rule without awaiting the response to the objections.

|  |  |
|---|---|
| | s/Michael Hluchaniuk |
| Date: December 18, 2008 | Michael Hluchaniuk |
| | United States Magistrate Judge |

# CERTIFICATE OF SERVICE

I certify that on <u>December 18, 2008,</u> I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send electronic notification to the following: <u>Derri T. Thomas, AUSA, Ronald B. Eskin, and Commissioner of Social Security</u>, and I certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: <u>Edward J. Hoort, Legal Services of Eastern Michigan, 547 S. Saginaw Street, Flint, MI 48502</u>.

s/James P. Peltier

Courtroom Deputy Clerk

U.S. District Court

600 Church Street

Flint, MI 48502

(810) 341-7850

pete_peltier@mied.uscourts.gov
